Edward M. O’Gorman, J.
This is an article 78 proceeding in which petitioner, an indigent, seeks to nullify an order of the Commissioner of Motor Vehicles which suspended his driver’s license because of his failure to satisfy a judgment against him. Petitioner seeks to have the court declare unconstitutional sections 332 and 336 of the Vehicle and Traffic Law, which are the provisions involved. These sections provide as follows:
"(a) The commissioner shall also suspend the operator’s or chauffeur’s license and any and all of the registration certificates and registration plates issued to any person upon receiving authenticated report as hereinafter provided that such *757 person has failed for a period of fifteen days to satisfy any judgment in amounts and upon a cause of action as hereinafter stated * * *
"(c) The commissioner shall take action as required in this section upon receiving proper evidence that any person in another state, the District of Columbia, any district court of the United States, or any province of Canada, has failed for a period of fifteen days to satisfy any judgment in amount as stated in section three hundred thirty-three and upon a cause of action as stated in this section.
"(d) Any person whose license, registration or non-resident’s driving privilege is subject to suspension hereunder, may be relieved from the effect of failure to satisfy such judgment, if such person files with the commissioner proper evidence that a bond or insurance policy as provided for in this article was in force and effect at the time of the accident resulting in the judgment, and was available for the satisfaction of the judgment to the extent provided for in section three hundred thirty-three and that such judgment was so satisfied.” (Vehicle and Traffic Law, § 332.)
"The clerk of the court, or the court where it has no clerk, shall, upon written request of the judgment creditor or his attorney, forward to the commissioner a certified copy of transcript of any judgment for damages, the rendering and non-payment of which judgment requires the commissioner to suspend the operator’s or chauffeur’s license and/or the registrations in the name of the judgment debtor hereunder, such copy or transcript to be forwarded to the commissioner immediately upon the expiration of fifteen days after such judgment has become final by expiration without appeal of the time within which appeal might have been perfected or by final affirmance on appeal, and has not been otherwise stayed, or satisfied.” (Vehicle and Traffic Law, § 336.)
The judgment, on account of which the suspension was ordered, was the result of an action brought following an accident which occurred on May 10, 1969. The petitioner was personally served with a summons and verified complaint in that action on February 13, 1970. The record indicates that judgment by default was entered on April 30, 1970; that the time to appeal from said order had expired and petitioner had neither appealed nor otherwise moved to vacate or set aside the default judgment; that the judgment has remained wholly unpaid for more than 15 days after the default was entered, *758 and petitioner currently owes the judgment creditor $564.85 with interest.
The right of the State to prohibit the operation of motor vehicles on State highways by drivers who have not complied with the provisions of the Motor Vehicle Safety Responsibility Act has been firmly established (see Reitz v Mealey, 314 US 33; Wright v Malloy, 373 F Supp 1011).
Nor do the provisions of the act violate the equal protection clause of the Constitution because some motorists, by reason of their indigency, are unable to comply with the financial security provisions therein and thereby lose their privilege to drive on the highways of the State (see Rivas v Cozens, 327 F Supp 867).
Following this reasoning, the statute is not rendered unconstitutional in this case solely by reason of the fact that the petitioner may have failed to pay the judgment herein because of his indigency.
The petitioner’s contention that the statute as applied to him is unconstitutional is based, in large part, upon the recent decision of the Supreme Court in North Georgia Finishing v Di-Chem (419 US 601). In that case, the Supreme Court held that a Georgia garnishment statute violated the due process clause of the Constitution because the statute permitted the issue of the writ of garnishment without participation of a judicial officer, allowed the issuing official to act solely upon an affidavit executed by the creditor’s attorney, and afforded the debtor neither notice nor an early hearing in connection therewith. It is contended on behalf of petitioner that sections 332 and 336 (supra) contain the identical vices present in the Georgia statute.
It is true that, as in the Georgia case, the petitioner has been deprived of a valuable property right. However, petitioner’s statement, as contained in his brief, that in this case, as in the Georgia case, "the government must deprive an automobile operator of his driving rights upon only a simple request of the creditor or his attorney” is not an accurate one.
In this case, before the Commissioner of Motor Vehicles may act, he is required by section 336 to have first placed before him a certified copy of the transcript of the judgment, with the clerk’s certification that 15 days have elapsed since the judgment became final and that the judgment has not been otherwise stayed or satisfied. In the court’s opinion, this certification by a disinterested public official provides an ade *759 quate basis for a conclusion by the Commissioner of Motor Vehicles that the facts as stated therein are probably true, and thus, prima facie, establish the basic fact on which depends his jurisdiction to take action pursuant to the statutory mandate.
In this connection, in Wright v Malloy (373 F Supp 1011, supra), the court indicated the nature of the test which must be met to establish constitutionality. Referring to the case of Bell v Burson (402 US 535), the court stated (p 1018), ’’Bell does not require that a hearing be held in all cases in which proof of financial responsibility is sought by the Commissioner but merely that there is a forum where the motorist may have the question of probability of fault determined before he is made to suffer suspension of his license for failure to establish his financial responsibility.” (Emphasis supplied.)
If the requirement of probability is satisfied, a proper balance is struck between implementing the legislative policy involved in the statute and preserving the right of the individual to insist that the requirements of due process be observed in the application of the statute to him.
Petitioner also contends that due process, as was held in the North Georgia case (supra), requires that the petitioner have an opportunity for a prompt hearing, either before or immediately after the suspension. The Attorney-General concedes that the petitioner is entitled to a hearing, but contends that the petitioner has had his opportunity for a hearing in the action brought against him by the judgment creditor, and that by virtue of his default in that action, he has, by his own inaction, failed to avail himself of the opportunity to be heard. The Attorney-General concludes, for that reason, that the procedure followed in this case did not fail to meet the hearing requirements of due process.
However, the opportunity to be heard on the merits of the judgment creditor’s claim is not the sole question on which the petitioner is entitled to be heard under the requirements of due process. He should, in this situation, be entitled to be heard as to whether the judgment has, despite the record, in fact been satisfied, or as to whether he is, in fact, the same person as the named judgment debtor, or to deny any other facts tending to render invalid the procedure whereby the Commissioner of Motor Vehicles suspended his license.
It should be pointed out in connection with the petitioner’s right to this hearing that the provisions of the Motor Vehicle *760 Safety Responsibility Act (Vehicle and Traffic Law, § 330, subd [d]) provide as follows: "Any person aggrieved by an order or act of the commissioner under this section or under provisions of this article, may maintain a proceeding under article seventy-eight of the civil practice law and rules to review, but the commencement of such a proceeding shall not suspend the order or act unless a stay thereof shall be allowed by said court pending final determination of the review.”
Under such a section, a person whose right to operate a motor vehicle was suspended under the circumstances here presented could forthwith obtain an order to show cause commencing an article 78 proceeding, and, upon making an appropriate showing to the court, obtain at the outset a stay of the suspension pending a complete hearing on the validity of the suspension in the subsequent proceeding. It would seem, therefore, with respect to the Motor Vehicle Safety Responsibility Act (Vehicle and Traffic Law, §§>332, 336), that the constitutional requirements of due process have been met. The element of probability that the action taken by the Commissioner was authorized has been insured by the provisions of section 336; and the provision for a prompt hearing on the commissioner’s right to suspend the license is contained in subdivision (d) of section 330.
Indeed, the present case is an example of the salutary operation of section 330. The petitioner, by this proceeding, is exercising his opportunity to obtain a prompt stay of the commissioner’s action, and has not yet been required to surrender his license.
This case can be distinguished from the case of Conroy v Melton (82 Misc 2d 750), recently decided by the Supreme Court, Orange County on June 30, 1975 and relied upon by petitioner. In that case, the court determined that the requirements of due process were not satisfied because the petitioner in that case had not been afforded a hearing prior to the deprivation of his right to drive a motor vehicle. In that case, the hearsay evidence before the commissioner was inadequate to establish that the owner of the motor vehicle probably had operated that vehicle upon the public highway while proof of financial security was not in effect. It was that basic fact upon which the commissioner’s right to act depended (see Vehicle and Traffic Law, § 318, subd 2, par [a]).
Petitioner also cites Miller v Depuy (307 F Supp 166), in which the court held that the Pennsylvania Financial Respon *761 sibility Law, which authorizes suspension of the license and registration of a person unable to pay a judgment resulting from an accident, was unconstitutional. However, the statute there (75 Pa Stat § 1413) must be distinguished from the New York statute in that the Pennsylvania statute made no provision for any review of the determination of the Secretary of Revenue. Further, the judgment debtor in that case had obtained a release of liability to pay the judgment in bankruptcy proceedings. In Miller (supra) the Secretary of Revenue, pursuant to the statute (75 Pa Stat § 1414) refused to recognize the discharge in bankruptcy. The court found that this conflict with the Federal Bankruptcy Law rendered the action of the Secretary of Revenue void under the Supremacy Clause of the Constitution. In Miller, the court also distinguishes the situation there presented from the present case on other grounds (see p 172).
For the foregoing reasons, the relief sought by petitioner will be denied, without prejudice to a subsequent application by petitioner to be relieved from the effect of his failure to satisfy such judgment, pursuant to the provisions of subdivision (d) of section 332. The statement in the petition, "Nor has it been found or suggested that petitioner lacked such requisite financial security at the time of the accident” does not provide sufficient "proper evidence” that such a required policy was in effect at the time of the accident as is required by said subdivision (d) of section 332.